## JOHN WALES vs. WILLIAM A. CHASE & another.

Suffolk.　Jan. 20. — June 24, 1885.　FIELD, DEVENS, & COLBURN, JJ., absent.

An action for use and occupation will not lie against the assignee in insolvency of a debtor, who, at the time of the filing of his petition, was a tenant at will of certain premises, merely upon proof that the goods of the insolvent were allowed to remain on the premises for about two months thereafter, and that during said time the assignee entered with workmen, who for several days were engaged in removing the goods.

CONTRACT for use and occupation of certain premises in Boston, from February 16 to April 17, 1883. Trial in the Superior Court, without a jury, before *Staples*, J., who allowed a bill of exceptions, in substance as follows :

It appeared that the Ashcroft and Barker Manufacturing Company went into insolvency on February 16, 1883 ; that the defendants were duly appointed assignees of the estate of said company on March 16, 1883 ; that the assets were $6367.07 ; that, under an order of distribution, on September 21, 1883, a dividend of twenty-two per cent was paid out to creditors, and a balance of $90 was left ; that $26 costs had accrued since said order, to be deducted from said $90, and the further sum of $31 was also liable to be deducted as costs ; that the messenger, in his return on the warrant, made no charge for the place where the goods hereinafter mentioned were kept on the plaintiff's premises ; and that the plaintiff made no claim in the Court of Insolvency for said use and occupation, except as hereinafter appears.

The plaintiff testified that said insolvent firm hired of him the premises named in the writ, consisting of a basement and one or two floors above, and the firm were occupying said premises as tenants at will, for the sale and storage of their merchandise, on February 16, when they went into insolvency ; that he made out his claim up to the time of the removal of the last thing, namely, a safe, from the building ; that he made no book charge against the assignees, but made out a bill against them the same as claimed in the writ ; that he proved against the estate, and took a dividend for his rent up to February 16 ; that he saw

Mr. Tyng, one of the assignees, a few days after his appointment, and told him he should hold him responsible for the rent; that he did not speak again to him until after April 16, when he presented the bill, and Tyng declined to pay it, saying it did not belong to him to pay, and he should not pay it; that Tyng was in and out of the premises while the goods were there, and men were putting up and carrying away the goods by his orders; that the assignees had keys of the premises all this time; that Tyng several times passed through the witness's office into the premises in question, when he did not have the key with him; that the witness allowed the safe to be taken out upon a written order and letter received by the witness from Tyng, on April 17, 1883.

On cross-examination, the plaintiff testified, that, some time after Tyng's election as assignee, he came to him and asked him to let him pass through the plaintiff's office into the premises in question, as he had no key; that he never notified said company that he terminated the lease; that he knew nothing in respect to the firm settling with their creditors and going on again in that place; and that the goods and property, or some of it, remained in said premises after the insolvency until April 16.

Charles E. Ashcroft testified, that he belonged to said firm at the time of the insolvency; that the firm occupied the premises mentioned in the writ, including the basement and five rooms, the basement for general merchandise, the floor above for an office, and the chambers above the office for merchandise, patterns, &c.; that the goods were steam-fitting goods; that the property was attached just prior to February 16, and the keys were turned over to the attaching officer; that, after the assignees were chosen, he went with Tyng to the place; that Tyng was there with the witness two or three times; that he looked over the property on the premises, and the witness pointed out certain papers which he wanted and certain exempted tools, and was allowed by the assignees to take said property away; that, when the witness entered the premises with Tyng, the witness had a duplicate key by which he entered; that he went there to show the assignee what the property was; that the firm paid $500 rent a year, and had entered on their second year; that after said February 16 he went in and out to get his things;

that, after the failure, the witness tried until March 16 to obtain a compromise; that the plaintiff, some time in February, told him that he might continue; that there was some thought of the witness buying out the assignees; and that, after the middle of March, there was some talk with the assignees in regard to one Davis buying the property, and the witness asked the assignees to hold off.

Stephen H. Tyng testified, for the defence, that, after the election of the assignees, March 16, at the request of Ashcroft, he did nothing until April 3 or 4 in relation to the property or going to the premises; that on the last date, the reason for holding off no longer existing, the witness sent for Ashcroft, who accompanied the witness to the premises, and let him in with his keys; that the witness looked the property over, and employed men five and a half days to get the property out and send it away; that when he went down the second time to meet the men employed by him, he was told by a young man in the plaintiff's office that they could go through there; that the witness always went through the plaintiff's place; that the witness told the plaintiff that he was one of the assignees and had to get the things out, to which the plaintiff replied that he was glad to accommodate the witness, that is, to allow him to pass through his office, the witness not having the key; that, on the last day when the witness went to see that all was taken out, he met the plaintiff, who said, "The attaching officer is liable for rent to me, is he not?" to which the witness replied, "Call and see me, and I'll see about it;" that that afternoon the messenger gave him the keys, to whom the witness said that he had nothing to do with it; that the witness gave the keys to one of the men employed in clearing out to give to the plaintiff; that everything was cleared out the next morning; that the plaintiff never told him he should hold him responsible; that, a few days after, the plaintiff brought the witness the bill, upon which the witness said it was no bill for him to pay; that the witness further told the plaintiff to "send his counsel, there might be a way to get something;" that the plaintiff said the estate ought to allow it; that it was subsequently agreed between the witness and the plaintiff's attorney to go to the judge of insolvency, and that the assignees would pay it, if the judge so decided; that the witness

and said attorney went to the judge, and each stated his view of the matter; that the judge said that the assignees might allow the bill up to the time the safe was sold, April 10, but not for a longer time; that the attorney for the plaintiff would not accept pay up to April 10, but required the same for the whole time claimed; that, at the time of this trial, the assignees had no assets not absorbed by expenses; that he never had control of the place, and never entered the place save for the purposes aforesaid; and that he wrote the above-named letter, the purchaser of the safe coming to him and saying that he could not get the safe.

On cross-examination, the witness testified that the property was all removed about a week before the removal of the safe.

In rebuttal, the plaintiff testified that he never told Tyng that he would hold the officer responsible for the bill; that Tyng wanted to sell him the safe, but he did not want it; and that he declined to deliver the safe without the order of Tyng.

I. D. Van Duzee, attorney for the plaintiff, testified that he went with Tyng to see the judge of insolvency, and stated the case to him, and that the judge told Tyng to pay a proper bill, and he would allow it; that after that Tyng asked the witness to come to his office; that witness presented the bill as sued for, and asked for the whole amount; and that Tyng declined to pay it, whereupon suit was brought.

The plaintiff asked the judge to rule, that, upon all the evidence in the case, the plaintiff was entitled to a finding in his favor.

The judge declined so to rule; and found and ordered judgment for the defendants. The plaintiff alleged exceptions.

*I. D. Van Duzee*, for the plaintiff.

*S. H. Tyng*, for the defendants.

W. ALLEN, J. Whether the plaintiff was entitled to recover depended upon what of the testimony was found to be true. If the judge who tried the case believed the testimony of the witness Tyng, not only did he properly refuse to rule, as requested, that, upon all the evidence in the case, the plaintiff was entitled to recover, but he could not have found that the relation of landlord and tenant, or any contract between the parties, was proved so as to give the plaintiff a right of action. Whatever inference

might have been drawn from the undisputed fact that goods of the insolvent, which passed to the defendants by the assignment, remained on the premises, with the knowledge and consent of both parties, for about two months after the appointment of the defendants as assignees, if it stood alone, the circumstances testified to by the witness for the defendants would negative an inference of an express or implied promise by them to pay for the use and occupation of the premises.  *Leonard* v. *Kingman,* 136 Mass. 123.                    *Exceptions overruled.*